Lee BAKER, Kathy Baker, Porter Williams, Beverly Williams, Ron Onnen, Phyllis Onnen, Robert Britson, and Barbara Britson, Appellees,

v.

The BOARD OF ADJUSTMENT OF THE CITY OF JOHNSTON, IOWA, The City of Johnston, Iowa, A Municipal Corporation, Dallas E. Patterson, Connie A. Patterson, Wesley D. Jordan, Lynne M. Jordan, Lonnie E. Smith and Paula L. Smith, Appellants.

No. 01–1380.

Supreme Court of Iowa.

Sept. 4, 2003.

As Amended on Denial of Rehearing Nov. 25, 2003.

J. Russell Hixson of Hixson Law Firm, P.C., Clive, for appellant, Board of Adjustment of the City of Johnston and the City of Johnston.

William J. Lillis and Daniel L. Manning of Connolly, O'Malley, Lillis, Hansen & Olson, L.L.P., Des Moines, for appellants, Dallas E. Patterson, Connie A. Patterson, Wesley D. Jordan, Lynne M. Jordan, Lonnie E. Smith and Paula L. Smith.

Jeffrey L. Goodman of Jeffrey L. Goodman, P.C., West Des Moines and Kurt S. Peterson of Pingel & Templer, P.C., West Des Moines, for appellees.

LAVORATO, Chief Justice.

The petitioners filed a writ of certiorari against the City of Johnston Board of Adjustment (Board) in the district court challenging the Board's grant of a variance regarding property owned by respondents Dallas E. Patterson and Connie A. Patterson. The Pattersons sought the variance before submitting to the Johnston City Council a plat covering the property in question.

Later, the petitioners joined several other individuals and the City of Johnston as respondents. Pursuant to a writ issued by the clerk of the district court, the Board filed a return on the writ. *See* Iowa R. Civ. P. 1.1404; Iowa Code § 414.17 (1997). Following a number of pretrial rulings, the district court agreed with the petitioners and ruled, among other things, that the Board could not grant the variance.

The respondents appealed raising a number of issues. One of those issues is whether the Pattersons were required to obtain the variance before submitting the plat for approval to the city council. We conclude they were not. For that reason, the case should have ended at the pretrial stage on the respondents' first motion to adjudicate law points. Accordingly, we reverse the judgment of the district court and vacate all the rulings beyond the respondents' first motion to adjudicate law points. We remand the case with directions.

## I. Background Facts and Proceedings.

The Pattersons owned a 2.985 acre residential lot in an R–1 (single family residential) zoning district in the City of Johnston, Iowa. A private drive created by a fifty-foot wide ingress/egress and utility easement provides access to the property. Thomas and Kristine Flynn granted the easement to the Pattersons, Robert and Barbara Britson, Kirby and Sharon Wilmore, and Ronald and Phyllis Onnen in 1988. At the time, the Britsons, Wilmores, and Onnens owned property adjoining the Pattersons' property. The Wilmores sold their property to Lee and Kathy Baker in 1995. The Britsons, Onnens, and Bakers owned their adjoining property at the time this action was commenced.

In 1995 the Pattersons granted a second ingress/egress and utility easement—thirty feet in width—to Lawrence and Linda Marsell, who owned property to the north of the Pattersons' property but not adjoining it.

The Pattersons wanted to create two lots, one on each side of the thirty-foot easement that severed the existing lot. They intended to sell the lot to the east of the easement, approximately 2.270 acres, on which their homestead was located. On the proposed new lot, approximately .715 acres, they planned to construct a new residence.

In 1996 the Pattersons began the process of creating a minor subdivision, splitting the one lot into two lots. The city's planning and zoning commission recommended to the city council approval of "Patterson Place Plat 2" minor subdivision.

Thereafter, the then city attorney informed the city that he believed the final plat should go to the Board. In accordance with that opinion, a city official notified the Pattersons by letter that before the proposed plat could be placed on the city council's agenda for action, the Board would have to grant a variance, as outlined in section 17.04.230 of the city's ordinances. That ordinance provided in relevant part:

> *Street Frontage Required.* Except as herein provided, no lot shall contain any building used for residential purposes unless such lot *abuts for at least forty (40) feet on a public street.* In situations of *hardship*, the Board of Adjustment may grant a *variance* from the minimum forty (40) feet frontage requirement, if an exclusive unobstructed private easement of access or private right-of-way of at least forty (40) feet wide to a street is provided for no more than one (1) single family detached dwelling, and if a common easement of access or right-of-way of at least fifty (50) feet wide is provided for two (2) or more single family dwellings. . . .

Johnston Municipal Ordinance § 17.04.230 (emphasis added).

In the letter, the city official explained to the Pattersons:

> The lots you proposed have at least 40 feet on frontage on the public access easement. However, the question was *raised whether the public access easement is a "public street" as required [by section 17.04.230]. . . . This easement is too limited to be considered a public street. Under the circumstances, this would not constitute a lawful subdivision.

The official, however, did advise the Pattersons that they could seek a variance from the Board based on hardship as provided in the ordinance. The Pattersons first sought a variance from the Board in 1996. They withdrew their request for a variance before the Board could take action on it, because of a staff recommendation that the Board deny the request. The Pattersons' second request, made in 1997, was denied by the Board.

In the interim, a new city attorney was appointed who, contrary to the former city attorney, believed no variance was required. However, the new city attorney advised that "in all fairness," because Mr. Patterson was now the mayor and to avoid the appearance of impropriety, the plat should go to the Board for its review.

In 1999 the Pattersons again sought a variance. On April 29, 1999, at a hearing before the Board on the Pattersons' variance request, counsel for the Bakers, Porter and Beverly Williams (owners of property southwest of, but not adjacent to, the Pattersons' property), the Onnens, and the Britsons (hereinafter "Petitioners") appeared to oppose the request.

According to city ordinance 17.04.210(E)(2), the Board has authority to grant a variance provided the conditions upon which the request is based "are not the result of actions of the property owner" and enforcement of the ordinance would result in "unnecessary hardship." The Board passed a motion "to approve the creation of a new lot on a private easement, 50 feet in width, based upon a hardship that the property is severed by the private drive."

This Board action prompted the petitioners to file on June 18 a petition for writ of certiorari and declaratory judgment

against the Board. The petitioners alleged that the Board acted illegally in approving the Pattersons' variance request primarily because the fact relied upon by the Board to establish hardship as required by the ordinance (section 17.04.210(E)(2)) was a condition predating the Pattersons' purchase of the property and was the result of the Pattersons' own actions. The clerk issued the writ and the Board filed its return on the writ.

Meanwhile, on July 19, the city council approved the final plat for Patterson Place Plat 2 (plat 2). None of the petitioners appealed from, or otherwise challenged, in the district court, the city council's action approving the plat.

On October 20 the Pattersons sold the new lot (Lot 2 of plat 2) lying west of the access easement to Wesley and Lynne Jordan. Later, the Pattersons sold their residence and all land lying east of the access easement (Lot 1 of plat 2) to Lonnie and Paula Smith.

On October 29 the district court heard the petitioners' request for stay to restrain the city from issuing any building permits for Lot 2. Because the city was not yet a party to the present action, the court did not issue a stay against the city, but did enjoin the Board from granting the variance until further order of the court.

On November 5 the city issued a building permit to the Jordans. The city attorney notified the petitioners' attorney about the permit, but the petitioners did not appeal or otherwise contest the issuance of the permit.

On November 29 the petitioners filed an amended writ of certiorari and for declaratory judgment, adding as respondents the city, the Pattersons, the Jordans, and the Smiths. (Hereinafter, the Board and the city are referred to collectively as "municipal respondents" and the Pattersons, Jordans, and Smiths as "individual respondents.") The amended petition contained the same allegations regarding the illegality of the Board's decision to grant the variance. Additional allegations centered on the Jordans' building permit and a request for temporary injunction to restrain the individual respondents from taking any further action regarding the property. Thereafter the district court issued a temporary restraining order as requested.

In March 2000 the individual respondents filed a request for adjudication of law points. The municipal respondents filed a joinder in the motion. The request asked the district court to determine that the Board lacked authority to decide whether a lot should or should not be created. Additionally, the request asked the court to determine that the Pattersons were not required to submit their proposed minor subdivision plat to the Board before action by the city council on the plat.

During the hearing on the motion, both sides introduced exhibits, and the individual respondents made an oral motion for summary judgment, which the petitioners resisted. The individual respondents made the motion for summary judgment on the expectation that a favorable ruling on its motion for adjudication of law points would resolve all the issues in the case. The petitioners made a cross-motion for summary judgment.

Following the hearing, the district court found, in a ruling dated April 11, 2000, that the Pattersons' claimed hardship was self-created and for that reason the Board acted illegally by granting a variance on the basis of hardship. The court entered judgment in favor of the petitioners and did not address the motion to adjudicate law points. The court ruled that "[a]ny building permit or subdivision approved in reliance on the variance granted by the

[Board] on April 29, 1999, is also illegal and void."

The individual respondents filed a motion pursuant to Iowa Rule of Civil Procedure 179(b) (now rule 1.904(2)) and a request for new trial. The individual respondents alleged that the court at the hearing on the motion to adjudicate law points led them to believe that it would rule favorably on the motion and for that reason they did not introduce evidence on the merits. These respondents contended that the court had a duty to rule on the motion to adjudicate law points and asked for a new trial based on irregularities in the proceedings. The petitioners' attorney filed an affidavit disputing that the district court had committed itself to ruling in favor of the motion to adjudicate law points.

The municipal respondents filed a motion requesting the court vacate its ruling on the merits and rule on the issues raised in the individual respondents' motion to adjudicate law points.

On August 10 the court granted the motion for adjudication of law points, concluding that a variance by the Board was not required before submission of the proposed plat to the city council for approval. However, the court denied the motion for summary judgment, concluding that a variance may have been required based on other issues of non-conformity raised both at the April 29, 1999 Board meeting and as outlined in the petition for writ of certiorari.

On August 15 the district court granted the motion for new trial. The court concluded that because of irregularities in the proceedings, including the issuance of its April 12 ruling prior to issuance of a ruling on the motions to adjudicate law points and for summary judgment, it was granting a new trial to allow all parties to introduce additional evidence.

In the meantime, on August 7 the city council passed Ordinance No. 579, amending section 17.04.230. The amendment in effect removed the requirements of a variance for approval of a residential building lacking street frontage but provided other conditions that had to be met.

In January 2001 the city passed Ordinance No. 595, which deleted section 17.04.230 from the zoning code and added it, in its entirety, to the subdivision regulations. The new ordinance is now section 16.20.065.

On April 9 the individual respondents filed a second motion to adjudicate law points. This time these respondents asked the court to determine as a matter of law that (1) the Board's actions and the subsequent certiorari petitions were moot because of the repeal of section 17.04.230 and the adoption of Ordinance No. 595 and (2) the time-of-decision rule applied so that the relevant ordinance was new section 16.20.065, not section 17.04.230. These respondents also alleged that the city had rescinded the building permit it had earlier granted for Lot 2.

The petitioners resisted the motion, alleging that the time-of-decision rule was inapplicable because of the municipal respondents' bad faith and that the amendments were invalid. Petitioners also filed a request for discovery sanctions against the municipal respondents because of their alleged failure to supplement petitioners' request for production of documents with the amendments to the ordinance at issue.

The municipal respondents filed a response to the individual respondents' second motion for adjudication of law points and to the petitioners' response to the motion. The municipal respondents concurred with the individual respondents that all issues were moot. They also asserted that the amended ordinance was

valid and there was no bad faith on the part of the municipal respondents. Attached to the response were several affidavits from city council members averring that they did not believe the passage of the amended ordinances would affect any ongoing litigation. The petitioners moved to strike the affidavits.

On July 31 the district court ruled on the individual respondents' second motion to adjudicate law points and the motions for sanctions and to strike affidavits. As to the second motion to adjudicate law points, the court concluded that (1) changes to the ordinance and revocation of the building permit for Lot 2 did not render the certiorari petition moot, (2) Ordinance No. 595 was void for lack of required notice, (3) Ordinance No. 579 was invalid to the extent it conferred the power to grant a special exception to the city council, and (4) the bad faith exception to the time-of-decision rule applied to the municipal respondents. The court therefore determined that the original, unamended section 17.04.230 applied to the case.

As to the motion for sanctions, the court concluded that the bad faith on the part of the municipal respondents coupled with the failure to comply with court orders supported an entry of default judgment against all the respondents. In granting the default, the court included the individual respondents because these respondents failed to supplement the record with additional evidence, which was the basis of the individual respondents' request for new trial. The court found that the request for new trial was a ruse to gain more time for the new ordinances to pass.

The court then concluded:

> [W]ithout additional evidence, the findings of fact and the basis for the original ruling stand and should be reinstated without further wasting of the

time and resources of the judicial system and the parties involved.

> Therefore, the court finds that … Johnston City Ordinance 17.04.230 in effect at the time of the filing of this action appl[ies]. The court further finds no hardship existed other than that of the making of the owners of the property, the Pattersons, and no basis for a variance exists. In addition, the court finds that approval of the plat would create a lot of a size not in conformity with the Comprehensive Plan. Although the zoning ordinance in effect at all times at issue in this action permitted lots of a smaller size than those permitted by the Comprehensive Plan, the court finds that it is the Comprehensive Plan which must be controlling in the present case. No variance may be granted by the Johnston Board of Adjustment for approval of the proposed plat and the plat may not be approved.

In addition, the court concluded "[n]o building permit may be issued for the proposed lot and any building permit previously issued is illegal and void." In effect, the district court reversed the Board's decision. *See* Iowa Code § 414.18 (providing that district court "may reverse or affirm, wholly or partly, or may modify the decision of [the board of adjustment] brought up for review"). Finally, the court granted the motion to strike affidavits.

## II. Issues.

In their appeals, the municipal and individual respondents raise similar issues. The municipal respondents contend the district court (1) exceeded its authority by ruling on issues not addressed by the Board, (2) erred in addressing the merits of the case after deciding a variance was not required from the Board, (3) improperly applied the bad faith exception to the time-of-decision rule, (4) applied an incor-

rect legal standard when reviewing the city council's actions in amending its ordinance, (5) improperly struck city council members' affidavits, (6) erred in finding the comprehensive plan controlled the city's consideration of the plat, (7) erred in finding the city failed to publish Ordinance No. 579, and (8) erred in imposing the sanction of default upon the municipal respondents.

The individual respondents contend the district court erred in (1) reviewing and deciding this case after it was clear the Board exceeded its jurisdiction, (2) determining the court had jurisdiction to determine the validity of plat 2, (3) treating the Pattersons' request under section 17.04.230 as a request for a variance when it was actually a request for special exemption, (4) determining the city acted in bad faith when it amended section 17.04.230, (5) determining the actions of the Board in April 1999 were not moot and in failing to apply the time-of-decision rule to the amended ordinance, and (6) imposing sanctions upon the individual respondents.

### III. Applicable Law and Scope of Review.

To guide us in resolving the procedural nightmare this record presents, we must review pertinent statutory and case law in the area of city zoning. Iowa Code section 414.15 permits any person aggrieved by any decision of the board of adjustment under Iowa Code chapter 414 (city zoning) to

present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of illegality.

Iowa Code § 414.15.

Once the petition is presented,

the court may allow a writ of certiorari directed to the board of adjustment to review such decision of the board of

adjustment and shall prescribe therein the time within which a return thereto must be made....

Iowa Code § 414.16.

The Board must then "return certified or sworn copies" of the original papers upon which the Board acted and "the return shall concisely set forth such other facts as may be permitted and material to show the grounds of the decision appealed from and shall be verified." Iowa Code § 414.17.

Iowa Code section 414.18 provides how the certiorari action is to be tried:

If upon the hearing which shall be tried de novo it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with the referee's findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. *The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review.*

Iowa Code § 414.18 (emphasis added).

Our case law has established the following standard of review for the district court under section 414.18:

[I]n a certiorari proceeding in a zoning case the district court finds the facts anew on the record made in the certiorari proceeding. That record will include the return to the writ and any additional evidence which may have been offered by the parties. *However, the district court is not free to decide the case anew. Illegality of the challenged board action is established by reason of the court's findings of fact if they do not provide substantial support for the board decision.* If the district court's findings of

fact leave the reasonableness of the board's decision open to a fair difference of opinion, the court may not substitute its decision for that of the board.

*Lauridsen v. City of Okoboji Bd. of Adjustment,* 554 N.W.2d 541, 543 (Iowa 1996) (citation omitted) (emphasis added); *see also Weldon v. Zoning Bd.,* 250 N.W.2d 396, 400 (Iowa 1977) ("The term 'de novo' as used in [section 414.18] does not bear its equitable connotation. It authorizes the taking of additional testimony, but only for the submission and consideration of those questions of illegality raised by the statutory petition for writ of certiorari." (Citation omitted.)); *Anderson v. Jester,* 206 Iowa 452, 463, 221 N.W. 354, 359 (1928) ("If one of the grounds of alleged illegality is arbitrary, unreasonable or discriminatory action on the part of the board, and on the facts the reasonableness of the board's action is open to fair difference of opinion, there is, as to that, no illegality. The court is not, in such case, authorized to substitute its judgment for that of the local board.")

 In *Anderson,* this court determined what effect the statutes have on the district court's mode and scope of review when one raises an issue of sufficiency of the evidence to support the board's decision:

The statute [Iowa Code section 414.18] does not require the board of adjustment to return findings of fact, nor does it, expressly or by implication, limit review to questions of illegality or jurisdiction or other questions appearing upon the face of the record anterior to the filing of petition in certiorari. On the contrary, it expressly declares that the "hearing" (cause) shall be tried de novo. *If all the material facts appear in the record, or are not disputed, or only questions arising upon the record are presented, the taking of evidence is not*

*necessary.* Questions likely to arise in such cases are of such great importance that the Legislature appears to have had in mind that the parties should, on the question of the legality of the board's action, be entitled to a full and complete hearing before a proper court of record and according to accepted judicial method of ascertaining facts. The parties are not on certiorari bound by the finding or opinion of the local board on the facts, or by the evidence offered there, or by knowledge outside of the evidence on which the board may have acted, but, ordinarily at least, are entitled to take testimony when a determinative issue of fact is raised.

*Id.* at 461–62, 221 N.W. at 359 (emphasis added).

 On the question of what use the district court may make of the factual record in the certiorari proceeding, the court in *Anderson* was very specific:

It is for illegality, therefore, and only on a petition setting forth illegality, that the writ may be allowed.... The trial de novo permitted the determination of whether testimony is necessary, and the admission of such testimony, or the reference permitted by section [414.18], *should be confined to the questions of illegality raised by the petition for the writ.* Arbitrary and unreasonable action or proceedings, not authorized by, or contrary to, the terms or spirit and purpose of the statute creating and defining the powers of the board, or contrary to, or unsupported by, facts on which power to act depends, or within which the power must be exercised, are illegal. If one of the grounds of alleged illegality is arbitrary, unreasonable or discriminatory action on the part of the board, and on the facts the reasonableness of the board's action is open to fair difference of opinion, there is, as to that,

no illegality. The court is not, in such case, authorized to substitute its judgment for that of the local board.

*Id.* at 463, 221 N.W. at 359 (emphasis added).

Iowa Rule of Civil Procedure 1.1412 governs our review from the district court's judgment. That rule provides that "[a]ppeal to the supreme court lies from a judgment of the district court in the certiorari proceeding, and will be governed by the rules applicable to appeals in ordinary actions." Iowa R. Civ. P. 1.1412. Our review is therefore the same as from judgment founded on a special verdict by a jury, that is, on assigned errors only. *Lauridsen*, 554 N.W.2d at 543. We are bound by the district court's findings if supported by substantial evidence. *Chrischilles v. Arnolds Park Zoning Bd. of Adjustment*, 505 N.W.2d 491, 493 (Iowa 1993). However, we are not bound by erroneous legal rulings that materially affect the court's decision. *Id.*

## IV. Analysis.

The first step in our analysis of the issues is to determine exactly what the Board decided. The return on the writ indicated that the Board voted on a motion "to approve the creation of a new lot on a private access easement, 50 feet in width, based upon a hardship that the property is severed by the private drive."

The second step in our analysis requires us to view the petition for certiorari and determine what the petitioners are alleging the Board did that was illegal. The primary allegation of illegality boils down to this: the Board had authority according to ordinance 17.04.210(E)(2) to grant a variance provided the conditions upon which the request is based are not the result of actions of the property owner and enforcement of the ordinance would result in unnecessary hardship. According to

the petition, substantial evidence does not support a finding that both conditions were met. Rather there was substantial evidence that the hardship created by the ordinance predated the Pattersons' purchase of the property and was the result of Pattersons' own action. Additionally, according to the petition, there was substantial evidence that enforcement of the ordinance did not result in unnecessary hardship. These allegations of illegality established the parameters of the district court's review.

Given the parameters of the district court's review, we think one of the issues the individual and municipal respondents raise is dispositive of this appeal. That issue centers on whether a variance from the Board was required before the city council's consideration and approval of plat 2.

As mentioned, in 1996 the city attorney advised the Pattersons that before their proposed plat could be placed on the city council's agenda, the Board would have to grant a variance pursuant to section 17.04.230. Contrary to this advice, a new city attorney believed that no variance was required but advised the matter should go to the Board to avoid the appearance of impropriety because Mr. Patterson was now the mayor of Johnston.

The individual respondents raised the issue in their first motion to adjudicate law points in March 2000 when they requested the court to determine as a matter of law that the Pattersons were not required to submit their proposed plat to the Board under section 17.04.230 before submitting the plat to the Johnston City Council for approval. The municipal respondents joined in this motion. The return indicates that the Board voted to grant a variance to "create" a new lot. That variance only pertained to Lot 2, the lot that

had no residential building on it. Section 17.04.230 required that "no lot shall contain any building used for residential purposes" unless the street frontage requirements were met. Because Lot 2 had no residential building on it, the individual and municipal respondents contended no variance was required.

In its ruling on the first motion to adjudicate law points, the district court agreed with the individual and municipal respondents:

> City ordinance section 17.04.230 deals specifically with lots which contain a residential building. The approval of the proposed plat would create two lots, one lot containing a residential building and one which would not. Only Lot 1, the lot containing the building is addressed by city ordinance section 17.04.230. There are no allegations that proposed Lot 1 is not in conformity with city ordinance section 17.04.230. It is only Lot 2 which is at issue. At the time of the approval of the proposed plat, Lot 2 did not contain a residential building and would not be impacted by any requirements of section17.04.230. *A variance by the Board of Adjustment based on the provision of section 17.04.230 was not required prior to submission of the proposed plat to the city council for approval.*

(Emphasis added.)

However, in its ruling on the individual respondents' oral motion for summary judgment, the court stated that its ruling on the motion to adjudicate law points was not dispositive of the case. The court proceeded to deny the motion for summary judgment, concluding that "a variance may have been required based on other issues of non-conformity" raised before the Board and in the petition for writ of certiorari.

The court did not elaborate on what these other issues of non-conformity were. However, a review of the hearing before the Board and the petition for writ of certiorari makes clear that those issues included the petitioners' claim the variance request was inconsistent with the "Johnston Comprehensive Plan" in several respects. The petitioners argued at the hearing and alleged in their petition that the variance was inconsistent with the plan because the variance created a lot smaller than one acre, allowed development on steep slopes on a Hayden soil site, required an additional on-site septic system, created additional traffic, and did not promote harmony within the neighborhood because neighboring property owners strongly opposed it.

The district court's ruling on the first motion to adjudicate law points became a basis for the court's conclusions in its ruling on the individual respondents' second motion to adjudicate law points. In the second motion, these respondents asked the district court to rule that all issues raised in the certiorari petition were moot because of the court's previous determination that it was unnecessary for the Pattersons to obtain a variance before submitting the plat to the city council. In their response to the second motion to adjudicate law points, the municipal respondents also argued the issues were moot.

In its ruling on the second motion to adjudicate law points, the court explained its previous ruling:

> The previous ruling [on the first motion to adjudicate law points] addressed the narrowly tailored question of whether "city ordinance section 17.04.230 requires approval of a variance prior to submission of the proposed plat to the city council." The court noted the ordinance "deals specifically with lots which contain a residential building," and found since no building existed on the proposed Lot 2, the proposed plat was

not impacted by the then existing section 17.04.230 and no variance [was] required by section 17.04.230. The court did not rule that no variance was required but only that the then existing section 17.04.230 did not require a variance for the creation of Lot 2. In fact, the court further noted "a variance may have been required based on other issues of non-conformity raised both at the April 29, 1999 Board of Adjustment meeting and outlined in the petition for writ of certiorari filed by the petitioners."

The court went on to rule that the issues raised in the certiorari petition were not moot.

The respondents contend the district court's ruling *granting* the respondents' first motion to adjudicate law points should have been the end of the case. We agree.

 Interpretation of section 17.04.230 is a question of law and is for us to decide. *Lauridsen,* 554 N.W.2d at 543. We apply the general rules of construction for statutes when interpreting ordinances. *Id.* We therefore look first to the ordinance's language. *Bernau v. Iowa Dep't of Transp.,* 580 N.W.2d 757, 761 (Iowa 1998). We do not search for meaning beyond the express terms of an ordinance when the ordinance is plain and its meaning is clear. *State v. Snyder,* 634 N.W.2d 613, 615 (Iowa 2001). Legislative intent is shown by what an ordinance says, rather than what it should or might have said. *City of New Hampton v. Blayne–Martin Corp.,* 594 N.W.2d 40, 46 (Iowa 1999).

 Section 17.04.230 requires that "no lot shall contain any building used for residential purposes" unless the street frontage requirements are met. Lot 2— the proposed lot for which the variance was requested—did not contain a "building used for residential purposes." Therefore, no Board action was necessary before the city council could approve the plat. The city council, not the Board, has the authority to approve a plat. *See* Iowa Code §§ 354.2(7), .8; *see also Oakes Constr. Co. v. City of Iowa City,* 304 N.W.2d 797, 798–99 (Iowa 1981). In short, any ruling by the Board on the variance request before city council approval of the plat was premature.

The ultimate issue before the Board was whether to grant a variance as to Lot 2 from the terms of section 17.04.230. Any "other issues of non-conformity" that arose during the hearing must have been ultimately related to whether the variance should be granted under the terms of section 17.04.230 once action by the Board was required. The court therefore, should have granted the individual respondents' oral motion for summary judgment because the fact that no variance was required left no issues for the court to decide.

 Because no variance as to Lot 2 pursuant to section 17.04.230 was required before submission of the proposed plat to the city council for approval, the council's approval of plat 2 is unrelated to the grant of a variance. No appeal was taken from the city council's decision to approve plat 2. Therefore, the approval of plat 2 stands, and the district court acted beyond its jurisdiction in ruling otherwise.

The decision we reach means the district court should not have addressed the merits of the petition for certiorari. Rather, after granting the first motion to adjudicate law points, the court should have granted the oral motion for summary judgment. The court erred in failing to grant the oral motion for summary judgment. Additionally, our decision renders moot all of the district court rulings beyond the ruling on the first motion to adjudicate law points. Accordingly, we reverse the judgment of the district court and vacate all its

rulings beyond its ruling on the first motion to adjudicate law points. We remand for a dismissal of petitioner's petition as to all respondents with costs taxed to the petitioners.

**JUDGMENT OF THE DISTRICT COURT REVERSED IN PART, VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS.**